# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| ILLINOIS LEAGUE OF ADVOCATES FOR THE DEVELOPMENTALLY, DISABLED, *et al.* | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 13 C 1300 |
| | ) | Judge Marvin E. Aspen |
| ILLINOIS DEPARTMENT OF HUMAN SERVICES, MICHELLE R.B. SADDLER, in her official capacity as Secretary of the Illinois Department of Human Services, KEVIN CASEY, in his official capacity as Director of Developmental Disabilities of the Illinois Department of Human Resources, and COMMUNITY RESOURCE ALLIANCE, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Court Judge:

On June 12, 2013, we entered a temporary restraining order ("TRO") (Dkt. No. 90) in this case, enjoining Defendants from transferring residents out of Murray Developmental Center ("Murray") without the consent of their legal guardians while the motion for preliminary injunction (Dkt. No. 8) remains pending. We subsequently entered an order addressing the limits of our jurisdiction over Plaintiffs' claims under the ripeness doctrine. (Dkt. No. 98.) The parties have filed motions seeking clarification of the TRO and resolution of certain disputes regarding a confidentiality order. (Dkt. Nos. 100, 104–5.) We assume familiarity with the factual background of this case as set forth in our prior orders.

## I.       CLARIFICATION OF THE TRO

## A.        Wards of the Office of the State Guardian ("OSG")

The parties filed motions for clarification because of a perceived discrepancy between the TRO and a footnote in our subsequent order on the issue of ripeness.  (Dkt. No. 102 at 1–2; Dkt. No. 105 at 2–5.)  The TRO prohibits the transfer of Murray residents without the consent of their legal guardians. (Dkt. No. 90.)  The footnote stated generally that "Defendants have stopped transferring Murray residents while the preliminary injunction is pending" (Dkt. No. 98 at 2, n.1.), which the parties apparently read as prohibiting *all* transfers, with or without guardian consent.  The parties read too much into the footnote.

 The footnote was simply an explanatory aside in the background section of our most recent opinion.  It observed that while transfers of Murray residents may be impending for the purposes of the ripeness analysis, as a factual matter they would not proceed during the pendency of the TRO.  This observation in no way determined or interpreted the scope and effect of the TRO.

The real issue underlying the present motion is whether Defendants may transfer Murray residents who are wards of the OSG with the OSG's consent.  Our TRO did not address this issue directly.  But it generally permits the transfer of residents with the consent of their legal guardian, without making any specific exceptions in the case of OSG wards.  (Dkt. No. 90 ¶ A.)

Plaintiffs argue that the consent of the OSG is invalid, because the guardian, Frieda Omar, is not acting in the best interests of her wards.  (Dkt. No. 105 at 5; Dkt. No. 71 at 8.) They also claim the OSG, as an arm of the State, has a conflict of interest in this case.  (*Id.*)  In *Struck v. Cook County Public Guardian*, however, the Seventh Circuit held that federal courts lack jurisdiction over legal challenges to the actions of state-appointed guardians.  508 F.3d 858,

859–60 (7th Cir. 2007).  In that case, the plaintiff alleged that a state-appointed guardian was abusing and isolating his mother.  *Id.* at 859.  The court held that under the *Rooker-Feldman* doctrine, a federal court could not review a state court decision to appoint a guardian.  *Id.*  And with respect to the guardian's conduct after appointment, the "probate exception" prevents federal courts from interfering with the state court's authority to manage and supervise the guardians they appoint.  *Id.* at 860.

A recent case in this district applied *Struck* to foreclose claims similar to those at issue in this case.  *M.G.S. ex rel. Sykes v. Toerpe*, No. 11 C 7934, 2012 WL 3235240, at *2–3 (N.D. Ill. Aug. 6, 2012).  In that case, the plaintiffs brought claims on behalf of state ward M.G.S., under Title II and III of the ADA, § 1983, and other legal theories, on the basis that M.G.S. was "being isolated, prevented from living where and how she chooses, denied medical treatment, prevented from assisting in the management of her affairs, and otherwise mistreated."  *Id.* at *1.  After examining *Struck*, the court concluded that it had "no jurisdiction to invalidate, modify, or place conditions on, the state-court judgment appointing M.G.S.'s guardian."  *Id.* at *3.

Plaintiffs cited three cases in their reply to the motion for TRO where a federal court either invalidated a guardianship or appointing a guardian *ad litem*, but none of them involved a guardian appointed by a state court and acting on behalf of the state.  (Dkt. No. 71 at 8.)  The distinction is critical.  Federal courts cannot assume authority over a state-appointed guardian without impermissibly invading the jurisdiction of the state court.

We will allow Plaintiffs two days to file a response if they believe we have any basis to exercise jurisdiction over claims related to the conduct of the OSG, in light of *Struck* and *M.G.S.*.  If Plaintiffs file a response, Defendants will have one day to reply.  Otherwise, the order will

stand as written, permitting Defendants to transfer wards of the OSG from Murray with the OSG's consent.

**B.      Former Jacksonville Developmental Center ("Jacksonville") residents**

Defendants also ask us to clarify the "the scope of the case with respect to the 2012 closure of Jacksonville Developmental Center," in light of our recent opinion on ripeness. (Dkt. No. 102 at 2.) That opinion held that we lack jurisdiction over certain claims related to future closures of SODCs that are not impending, because those claims are not ripe. (Dkt. No. 98 at 1.) Jacksonville is already closed, so the opinion has no effect on the claims of former Jacksonville residents. Plaintiffs' proposed class includes "[a]ll severe and profound developmentally delayed adult individuals who reside presently, or resided in the past, in [an SODC] at any time since January 1, 2011, or at any time during this litigation, who oppose any transfer from their SODC to a community housing setting." (2d Am. Compl. ¶ 42.) All former Jacksonville residents who fit that definition remain potential class members, and those who are named plaintiffs remain named plaintiffs. Their status in this case has not changed.

It is true that the claims of former Jacksonville residents may not have an immediate bearing on the present motion for preliminary injunction. That is because injunctive relief, by definition, is prospective. The focus of the pending motion is limited to whether we should prohibit impending transfers out of Murray. We cannot enjoin transfers that have already happened, so we do not expect the circumstances of former Jacksonville residents to be an issue at the upcoming hearing. We stress, however, that the claims of former Jacksonville residents remain viable insofar as they are potential class members or named plaintiffs, and we will consider them at the appropriate stage in this litigation.

4

### C.     Plaintiffs' standing to represent unnamed class members

Defendants contend that our opinion on ripeness gives them a basis for challenging Plaintiffs' standing.  (Dkt. No. 102 at 3.)  Our opinion observed that resolution of claims based on allegedly harmful transfers out of SDOCs will necessarily require a fact-intensive inquiry.  (Dkt. No. 98 at 4.)  According to Defendants, this means that Plaintiffs lack standing to represent former Jacksonville residents who are unnamed plaintiffs, because a fact-intensive inquiry "requires participation of individual members in the lawsuit," thus precluding Plaintiffs' "associational standing" to represent them as an organization.  (Dkt. No. 102 at 2 (citing *Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).)

Defendants' argument fails for two reasons.  First, an examination of the facts surrounding the transfers of individual residents does not necessarily require the residents' participation as named parties.  Should we grant class certification, Plaintiffs as class representatives should be capable of discovering and submitting evidence regarding the specific circumstances of individual transfers to the extent necessary.  Second, the validity of Plaintiffs' representation of unnamed parties is an issue we will resolve on a motion for class certification, under the standards set forth under Federal Rule of Civil Procedure 23.  An inquiry into organizational standing is not necessary or appropriate at this time.

A closely related point requires further clarification.  Defendants' argument here appears to presuppose that prior to class certification, injunctive relief cannot apply to unnamed parties.  (Dkt. No. 102 at 3 ("It is difficult to see how the plaintiffs . . . with no certified class, and no finding by the Court of sufficient commonality of issues and fact and law, would have associational standing to represent any former Jacksonville residents beyond the named

plaintiffs.").) Indeed, in earlier briefing, Defendants stated baldly that the "entry of the TRO protects the named Plaintiffs . . . The Court did not rule, in a case that is not a class action, that the Plaintiffs can in effect speak for all residents and override guardian decision-making." (Dkt. No. 77 at 2.)

Defendants are incorrect. This case is a class action, and we have never ruled that injunctive relief prior to certification only applies to named plaintiffs. District courts have the power to order injunctive relief covering potential class members prior to class certification.

"In the civil rights field, it is common to find an immediate need for preliminary injunctive relief, in order to maintain the status quo or to afford relief on a timely basis." 3 *Newberg on Class Actions* § 9:45 (4th ed. 2002). "The court may conditionally certify the class or otherwise order a broad preliminary injunction, without a formal class ruling, under its general equity powers. The lack of formal class certification does not create an obstacle to classwide preliminary injunctive relief when activities of the defendant are directed generally against a class of persons." *Id*; s*ee also N.Y. State Nat. Org. For Women v. Terry*, 697 F. Supp. 1324, 1336 (S.D.N.Y. 1988) (rejecting the defendants' argument that "the Court is without power to grant relief to a class that has not been certified," and holding that "the Court acted in the only reasonable manner it could under the circumstances, ruling on the continuation of [the] temporary restraining order and leaving the question of class certification for another day."); *Giorgi v. Doody*, 537 F. Supp. 1251, 1252 (D. Mass. 1982) (entering an order prohibiting the destruction of files related to unemployment compensation claims of potential class members); *Leisner v. New York Tel. Co*, 358 F. Supp. 359, 371 (S.D.N.Y. 1973) ("[R]elief as to the class is appropriate at this time even though when the preliminary injunction motion was heard, the class

action had not yet been certified.  In the interim between the commencement of the suit as a class action and the court's determination as to whether it should be so maintained it should be treated as a class suit.").

The TRO prevents the unconsented transfer of residents out of Murray while the motion for preliminary injunction is pending, regardless of whether the residents are named plaintiffs or not.  It is necessary in order to prevent Defendants from rendering the claims of both named plaintiffs and potential class members moot, by transferring them out of Murray prior to the proper resolution of their claims.  At this early stage in the proceedings, the class allegations in the Second Amended Complaint are sufficient to establish Plaintiffs' standing to seek immediate injunctive relief on behalf of the proposed class.  At a later stage, we may revisit whether that classwide representation is inappropriate, but until that time, we will preserve the status quo (within the limits set forth in the TRO) with respect to all potential class members.

## II.    CONFIDENTIALITY ORDER

The parties have exchanged proposed Confidentiality Orders, but find themselves at an impasse on the redaction of identifying information from medical records and the confidentiality of depositions.  (Dkt. Nos. 100 at 1–3 and 105 at 5–6.)  Plaintiffs additionally request that expert testimony be presented live at the hearing, rather than by affidavit.  (Dkt. No. 105 at 7.)

### A.    Redaction of Medical Records

Defendants stress the private nature of the information contained in the medical records (Dkt. No. 100 at 3), but offer no convincing reason why the confidentiality order is insufficient to protect that information in unredacted form.  Plaintiffs point out that complete redaction of all identifying information will impose a significant burden on them, because it will prevent them

from matching the records to the correct Murray residents. (Dkt. No. 105 at 6–7.) We agree with Plaintiffs that the complete redaction of all identifying information is unnecessary, and adopt their request to leave names and ages unredacted.

**B.      Confidentiality of Depositions**

Defendants' proposed order includes "Alternative B" of Paragraph 4, suggested in this district's Model Confidentiality Order, which provides that all deposition testimony will be confidential "until the expiration of 14 days after the transcript is delivered, but no later than 60 days after testimony is given." (Dkt. No. 100 at 2.) Defendants argue that this is the best course because, given the expedited nature of discovery at this point, it will be "too difficult and inefficient to indicate which portions are being designated confidential on the record at the time of the deposition." (*Id.* at 4–5.) Plaintiffs argue that designating all depositions as confidential at the outset would "add an unnecessary burden as the parties prepare for the preliminary injunction hearing and future discovery" (Dkt. No. 105 at 7), but offers no explanation of what that burden might be.

We agree with Defendants that the deposition testimony is likely to refer to confidential information, and that it will be more efficient to designate them all as confidential for the limited time set forth in the model order.

**C.      Expert witness testimony**

Defendants do not oppose Plaintiffs' request for live expert testimony. We will allow the experts to testify at the hearing in a narrative format, similar to affidavit form.

**CONCLUSION**

8

In accordance with Part I, Plaintiffs may submit a response within two days of the entry of this order, regarding our jurisdiction to hear challenges to the conduct of the OSG. If Plaintiffs choose to submit a response, Defendants may submit a reply within one day. The parties shall submit a joint propose confidentiality order within three days, in accordance with our holdings in Part II. It is so ordered.

Honorable Marvin E. Aspen
U.S. District Court Judge

Date: June 28, 2013