**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ILLINOIS LEAGUE OF ADVOCATES FOR THE DEVELOPMENTALLY, DISABLED, *et al.* ) ) ) ) Plaintiffs, ) ) v. ) ) ILLINOIS DEPARTMENT OF HUMAN SERVICES, MICHELLE R.B. SADDLER, in her official capacity as Secretary of the Illinois Department of Human Services, KEVIN CASEY, in his official capacity as Director of Developmental Disabilities of the Illinois Department of Human Resources, and COMMUNITY RESOURCE ALLIANCE, ) ) ) ) ) ) ) ) ) ) Defendants. ) ) | Case No. 13 C 1300<br><br>Judge Marvin E. Aspen |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Court Judge:

Plaintiffs' motion for preliminary injunction (Dkt. No. 8) is currently pending, and a temporary restraining order ("TRO") is in place (Dkt. No. 90). This order addresses an issue that the parties raised with respect to the scope of the TRO.

### BACKGROUND

We assume familiarity with the background of this case and only discuss those facts that are pertinent to the present motion. Plaintiffs are seeking a preliminary injunction to prevent the closure of Murray Developmental Center ("Murray"), one of several state operated developmental centers ("SODC") in Illinois that provide care for developmentally disabled residents. (Dkt. No. 9 at 2–3.) In the related second amended complaint ("SAC"), Plaintiffs

allege that Defendants are transferring residents of SODCs, without their consent, into community integrated living arrangements ("CILA") that are unsuitable for their needs. (SAC ¶ 3.) Plaintiffs bring claims under the American with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–81, and various other federal statutes, on behalf of a class defined as "[a]ll severe and profound developmentally delayed adult individuals who reside presently, or resided in the past, in [an SODC] at any time since January 1, 2011, or at any time during this litigation, who oppose any transfer from their SODC to a community housing setting." (*Id.* ¶¶ 10–22, 42.)

On June 12, 2013, we granted Plaintiffs' motion for a TRO to prevent the transfer of residents out of Murray while the motion for preliminary injunction is pending. (Dkt. No. 90.) We also issued an opinion identifying certain claims as unripe, thus removing them from this case for lack of jurisdiction. (Dkt. No. 98.) The parties subsequently asked for clarification on a specific issue that our TRO did not directly address. (Dkt. No. 102, 105.) Certain residents of Murray are wards of the Office of the State Guardian ("OSG"), which has consented to the transfer of at least some of its wards into CILAs. Plaintiffs argue that the OSG is not acting in the best interests of its wards, and as an arm of the state, has a conflict of interest in the present suit. (Dkt. No. 105 at 2–3.) We held that the "probate exception," as explained in *Struck v. Cook County Public Guardian*, prevents us from assuming authority over the OSG wards and declaring the consent of the OSG invalid. (Dkt. 112 at 2–3.) *See Struck*, 508 F.3d 858, 858–60; *see also M.G.S. ex rel. Sykes v. Toerpe*, No. 11 C 07934, 2012 WL 3235240, at *1–3 (N.D. Ill. Aug. 6, 2012). But mindful of the fact that the parties had not briefed the issue of the probate exception, we gave them the opportunity to file a supplemental response and reply. (Dkt. No. 112 at 3.) This opinion addresses those additional briefs.

2

I.  **The extent of the probate exception under *Marshall v. Marshall***

The issue presently before us is whether the probate exception to federal jurisdiction prevents us from hearing challenges to the OSG's consent to have its wards transferred out of Murray. Plaintiffs begin by pointing to *Marshall v. Marshall*, in which the Supreme Court clarified the scope of the probate exception. 547 U.S. 293, 310–12, 126 S. Ct. 1735, 1747–48 (2006). The Supreme Court held that the federal court "may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court," but it may "adjudicate rights in such property where the final judgment does not interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court." *Id.* at 310; 126 S. Ct at 1747 (quoting *Markham v. Allen*, 326 U.S. 490, 494, 66 S. Ct. 296, 298 (1946)). It further explained that "we comprehend the 'interference' language in *Markham* as essentially a reiteration of the general principle that, when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*." *Id.* at 311; 126 S. Ct at 1748.

In *Struck*, the Seventh Circuit explained that this general principle applies equally to people over whom the state has assumed guardianship. 508 F.3d 858, 860 ("The *res*—the plaintiff's mother—is in the control of the guardian appointed by the state court . . ."); *see also M.G.S.*, 2012 WL 3235240, at *3 (". . . M.G.S. is a person in the control of the Probate Division of the Circuit Court of Cook County; as unappealing as it sounds applied to a living person, she is the *res* in an *in-rem* proceeding—the contested guardianship case.").

Plaintiffs argue that the probate exception, as defined in *Marshall*, does not prohibit us from exercising jurisdiction over the OSG wards, because we are adjudicating a federal right to

3

which the state court must adhere. (Dkt. No. 116 at 2–3.) According to Plaintiffs, the relief they seek in this case "does not impinge on any state-controlled adjudication of the ward, 'save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court' to protect the wards from an ADA violation." (*Id.* at 3 (quoting *Marshall,* 547 U.S. at 310, 126 S. Ct at 1747).)

The problem with Plaintiffs' argument is that it assumes the OSG wards are potential class members with federal rights at stake in this case. Plaintiffs' federal claims and the definition of their proposed class are both premised on the Murray residents' lack of consent. (Dkt. No. ¶¶ 4, 42.) Where a resident consents to the transfer, through his or her legal guardian, there is no basis for a federal discrimination claim, and that resident is not a potential class member. Indeed, it would violate the ADA to keep a resident in Murray who is willing and able to live in a community-integrated setting. *See Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 598–603, 119 S. Ct. 2176, 2185–88 (1999).

Therefore, the question is not whether the adjudication of the federal claims interferes with state court control of OSG wards residing at Murray. The OSG, as legal guardian of those residents, has consented to the transfers, so there is no federal claim to adjudicate on their behalf. Instead, the issue facing us is whether we can decide as a preliminary matter that the consent of the OSG is defective or invalid, thus opening the door for Plaintiffs to bring federal discrimination claims on behalf of the OSG wards.

Unless we make that determination, there is no federal right to adjudicate. And it is precisely that determination that the probate exception prohibits. Reversing or invalidating the consent of the OSG is an exercise of judicial authority no different than removing the wards

4

from the custody of the OSG. In either case, we are substituting our own authority and judgment for the authority and judgment of the state-appointed guardian. "That is the sort of maneuver that the probate/domestic relations exception is intended to prevent." *Struck*, 508 F.3d at 860.

Our holding on this issue in no way diminishes the extreme vulnerability of the Murray residents, and we express no opinion whatsoever on whether the OSG is faithfully executing her duty to act in the best interests of the wards. But a federal court does not have the authority to address that question. If Plaintiffs believe that the OSG is not acting in its wards' best interests, they must seek relief in the state court that supervises the OSG. Absent a state-court adjudication removing the authority of the OSG, the consent of the OSG to the transfer of its wards precludes the present federal discrimination claims arising out of that transfer.

## II.     The applicability of *Struck* and *M.G.S.*

Plaintiffs argue next that *Struck* and *M.G.S.* are distinguishable from the present case, but in light of our foregoing analysis, their arguments are unpersuasive. Plaintiffs point out that this case involves class-wide adjudication of a federal right, rather than a challenge to the guardianship of a single ward. (Dkt. No 116 at 4–5.) They also suggest a number of factors we should consider in choosing to exercise jurisdiction: (1) the application of federal law is within the specific expertise of the federal courts; (2) sending OSG wards to state court would split the class and create duplicative "dual-track" litigation in state and federal court; (3) Plaintiffs are not seeking review of the state court decision to appoint the guardian; (4) the case does not eliminate the state court's jurisdiction over the OSG residents, and (5) requiring the OSG wards to seeks relief in state court would cause irreparable harm. (*Id.* at 5–8.) None of these arguments have merit.

As we explained above, both the class definition and the federal discrimination claims depend on a lack of consent. As long as the OSG consents to the transfer of its wards, those wards are not potential class members and they have no federal discrimination claim. Therefore it is irrelevant, with respect to the OSG wards, that the application of federal statutes is within our expertise. Their consent precludes the federal discrimination claim. For the same reason, our decision does not create "dual-track" litigation. We are not splitting the class and sending part of it to state court. The consent of the OSG removes its wards from the potential class.

The OSG wards only become potential class members with federal discrimination claims if we decide as an initial matter that the OSG's consent is invalid. Plaintiff's remaining three arguments aim to show that invalidating the OSG's consent does not actually amount to "interference" with state court authority over the OSG wards. These arguments are equally unpersuasive.

First, Plaintiffs' claim that they are not seeking review of a state-court decision to appoint the state guardian. (*Id.* at 6–7.) That is true, but it relates more to the *Rooker-Feldman* doctrine (which prohibits appellate review of state court decisions by federal district courts) than the probate exception. The question here is not whether we are reviewing a state court decision, but whether we are interfering with the state's control of its ward. In *Struck*, the plaintiff claimed constitutional violations related to the state guardian's treatment of his mother. 508 F.3d at 858. The court held that "decisions concerning the plaintiff's right of access to his mother and to her assets, her records, and her mail are at the heart of the guardian's responsibilities and are supervised by the court that appointed him." *Id.* at 860.

In other words, the federal court would not adjudicate a constitutional claim that required evaluating or assuming authority over the decisions of a state-appointed guardian. Similarly here, the OSG's decision whether to consent to its wards' placement in a community-integrated setting is "at the heart of the guardian's responsibilities." *Id.* Plaintiffs' federal statutory claims require us to hold that the OSG is doing its job improperly by providing that consent. In that respect, this case is no different that *Struck*. If the state guardian is failing to adequately perform its responsibilities, the state court who appointed it must resolve that issue, even if the alleged failure may give rise to a claim under federal laws.

Plaintiffs' attempt to distinguish this case—that "Plaintiffs' sought remedy only affects the OSG to the extent that it consents to the State's unlawful policy"—is entirely circular. The State's policy is only allegedly unlawful to the extent that the residents do *not* consent. Plaintiffs are essentially arguing that the OSG's consent is invalid because the policy is unlawful, and the policy is unlawful because the residents do not consent. That line of reasoning is only possible if we begin with the premise that the OSG does not actually represent the residents. As should be abundantly clear at this point, we have do not the authority to invalidate, even implicitly, the OSG's representation of its wards.

Plaintiffs' last two points do not require extensive analysis. Plaintiffs state that they do not seek to eliminate the state court's jurisdiction over the OSG residents. But as we explained earlier, ignoring or overriding the OSG's decision regarding the residential placement of its wards would be impermissible interference with the State's authority, even if we do not entirely remove the ward from the OSG's guardianship. Finally, Plaintiffs state that sending this matter to state court would cause irreparable harm to OSG wards. But the risk of harm to the parties

before us does not define the limits of our jurisdiction. If we have no power to take a particular judicial action, the parties must seek relief in the appropriate forum.

## CONCLUSION

For the reasons explained above, we hold that we lack jurisdiction to invalidate or overrule the consent of the OSG with respect to the transfer of its wards at Murray. If the OSG provides written consent to transfer its wards, Defendants may do so without violating the terms of the TRO. It is so ordered.

_____
Honorable Marvin E. Aspen
U.S. District Court Judge

Date: July 18, 2013