# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| ILLINOIS LEAGUE OF ADVOCATES FOR THE DEVELOPMENTALLY, DISABLED, *et al.* | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 13 C 1300 Judge Marvin E. Aspen |
| PATRICK QUINN, *et al.* | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Court Judge:

Presently before us is Defendants'[1] disputed claim of privilege with respect to numerous documents identified during the parties' expedited discovery. (Dkt. No. 184.) After reviewing the documents *in camera* and considering the parties' positions, we allow the motion in part, and deny it in part. As discussed below, Defendants shall produce the documents identified as categories 1 through 4, and categories 6 through 8, within three business hours. The documents included as the fifth category are shielded by the deliberative process privilege.

## BACKGROUND

We assume familiarity with the factual background of this case, previously recounted in other opinions, and discuss only those facts pertinent to the present dispute. Plaintiffs seek a preliminary injunction preventing the closure of the Murray Developmental Center ("Murray")

---

[1] For purposes of this opinion, and unless otherwise indicated, "Defendants" refers to Illinois Department of Human Services ("DHS"), Kevin Casey, and Michelle R.B. Saddler.

and the transfer of its residents to other locations, if those residents have not consented to such transfer. (Pls.' Mem. ISO Legal Theory at 7.) Plaintiffs also ask that we enjoin the Defendants, including Defendant Community Resources Associates ("CRA"), from conducting any pre-transfer assessments or related activities, unless undertaken with a guardian's approval. (*Id.*) The preliminary injunction hearing is scheduled to commence September 9, 2013 at 10 a.m. In preparation for the hearing, the parties have engaged in expedited discovery.

During the course of discovery, Defendants identified roughly 100 documents they contend are protected by the deliberative process privilege. Defendants group these documents into eight categories: (1) DHS communications about funding and budgeting proposals for Community Integrated Living Arrangements ("CILAs"); (2) agency communications about proposed policies and procedures for Murray in preparation for its closure; (3) documents concerning the Active Community Care Transition ("ACCT") process;[2] (4) memos from CRA to DHS about closing the Murray and Jacksonville facilities; (5) documents showing DHS's deliberations and opinions about proposed legislation; (6) documents showing recommendations and deliberations about the Rebalancing Initiative; (7) documents about proposals on the Regional Management Structure; and (8) one document containing pre-decisional deliberations about eligibility to receive benefits. (Mem. at 2–3.) In support of their assertion of privilege, Defendants submitted their privilege log and filed a declaration from Kevin Casey, the Director of Developmental Disabilities for DHS. (Dkt. Nos. 184-2 & 186-1 (Casey Decl.).) Casey states that he believes all of these withheld documents are

---

[2] Neither party has defined the ACCT process, but we assume for present purposes that it is the name given, or perhaps a working group effectuating, CRA's assessment process undertaken on behalf of DHS.

pre-decisional and should remain confidential. (Casey Decl. ¶¶ 5, 7–8.) In compliance with our earlier orders (Dkt. Nos. 174 & 178), Defendants submitted the documents for *in camera* review.

Plaintiffs contest Defendants' assertion of the deliberative process privilege on several grounds. Plaintiffs argue that Defendants have not sufficiently demonstrated the privilege and, moreover, that it does not apply under these circumstances because Defendants' intent is at issue. (Resp. at 1–3.) They further contend that, even if Defendants met their burden, Plaintiffs have a particularized need for the documents that trumps the privilege. (*Id.* at 3–5.) Having considered the parties' briefs, including the recently-filed sur-reply, we will consider each argument in turn.

Our applications of law to fact in deciding Defendants' claim of privilege are subject to review on appeal for clear error. *Valero Energy Corp. v. U.S.*, 569 F.3d 626, 630 (7th Cir. 2009); *U.S. v. BDO Seidman, LLP*, 492 F.3d 806, 814 (7th Cir. 2007). "Findings regarding privilege are fact-intensive, case-specific questions that fall within the district court's expertise, and, under these circumstances, a light appellate touch is best." *Valero Energy Corp.*, 569 F.3d at 630 (internal quotation omitted). "On the other hand, the scope of a privilege is a question of law," which is reviewed de novo. *BDO Seidman, LLP*, 492 F.3d at 814; *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618–19 (7th Cir. 2010); *Jenkins v. Bartlett*, 487 F.3d 482, 491 (7th Cir. 2007) (reviewing de novo the district court's assumption that an attorney performing investigative work is not acting as an attorney, for purposes of the attorney-client privilege).

## ANALYSIS

"The deliberative process privilege protects communications that are part of the decision-making process of a governmental agency." *U.S. v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–52, 95 S. Ct. 1504, 1516–17 (1975)); *Evans v. City of Chi.*, 231 F.R.D. 302, 315–16 (N.D. Ill. 2005); *Tumas v. Bd. of Educ. of Lyons Twp. High Sch. Dist. 204*, No. 06 C 1943, 2007 WL 2228695, at *1 (N.D. Ill. July 31, 2007). The privilege protects "communications made prior to and as a part of an agency determination" because "frank discussion of legal and policy matters is essential" to governmental decisionmaking. *Farley*, 11 F.3d at 1389; *Evans*, 231 F.R.D. at 316; *Tumas*, 2007 WL 2228695, at *1. "[T]he ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions." *Sears, Roebuck & Co.*, 421 U.S. at 150, 95 S. Ct. at 1516. Accordingly, the privilege covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Id.*; *see Evans*, 231 F.R.D. at 316. Nonetheless, the privilege is not absolute, and it "may be overcome where there is a sufficient showing of particularized need to outweigh the reasons for confidentiality." *Farley*, 11 F.3d at 1389; *Tumas*, 2007 WL 2228695, at *1; *see also Sronkoski v. Schaumburg Sch. Dist., No. 54*, No. 08 C 721, 2009 WL 1940779, at *1 (N.D. Ill. July 1, 2009).

We therefore follow a two-step analysis when evaluating Defendants' claim. We first must decide whether Defendants have complied with procedural requirements and shown that the privilege in fact applies to each of the withheld documents. If the privilege applies, we consider whether Plaintiffs have shown a particularized need for any of the materials that

warrants disclosure.  *Sronkoski*, 2009 WL 1940779, at *1; *Evans*, 231 F.R.D. at 316; *Ferrell v. U.S. Dep't of Housing & Urban Dev.*, 177 F.R.D. 425, 428 (N.D. Ill. 1998).

### A.       Availability of the Privilege Where Intent Is at Issue

Before we undertake the two-part analysis, we briefly consider a threshold question raised by the parties: whether, as a matter of law, the deliberative process privilege applies where the government's intent is at issue.  As Plaintiffs point out, several district and magistrate judges in the Seventh Circuit have concluded that this privilege has no effect where the intent behind the government's decision-making process is directly at question.  *U.S. v. Lake County Bd. of Commrs.*, 233 F.R.D. 523, 526–27 (N.D. Ind. 2005) (holding that the privilege "does not apply in civil rights cases in which the defendant's intent to discriminate is at issue"); *see Glenwood Halsted LLC v. Vill. of Glenwood*, No. 11 C 6772, 2013 WL 140794, at *3 (N.D. Ill. Jan. 11, 2013); *Lewis v. Phillips*, No. 10 C 3163, 2012 WL 5499448, at *2 (C.D. Ill. Nov. 13, 2012); *Dunnet Bay Constr. Co. v. Hannig*, No. 10 C 3051, 2012 WL 1599893, at *3 (C.D. Ill. May 7, 2012); *Anderson v. Marion Cty. Sheriff's Dep't*, 220 F.R.D. 555, 561 (S.D. Ind. 2004); *Anderson v. Cornejo*, No. 97 C 7556, 2001 WL 826878, at *2 (N.D. Ill. 2001).  The Seventh Circuit has not yet evaluated this approach.

In the absence of clear precedent, we are reluctant to preclude reliance on the privilege—generally a case-specific proposition—as a matter of law.  *See, e.g.*, *Valero Energy Corp.*, 569 F.3d at 630 (noting that questions of privilege are "fact-intensive, case-specific questions"); *First Heights Bank, FSB v. U.S.*, 46 Fed. Cl. 312, 322 (Fed. Cl. 2000) (declining to follow the line of cases precluding this privilege as a matter of law).  Nonetheless, in light of our conclusions below requiring additional disclosures, we need not rule on this specific question.

As recognized by the above cases, the government's intent, where directly contested, is without question a critical factor to consider when analyzing a litigant's need for withheld documents. *U.S. v. Bd. of Educ. of City of Chi.*, 610 F. Supp. 695, 700 (N.D. Ill. 1985) (rejecting assertion of privilege where the decisionmaking process "*is* the case"); *see In re Delphi Corp.*, 276 F.R.D. 81, 84–86 (S.D.N.Y. 2011) (subjecting the privilege to the balancing test, noting that disclosure will often follow anyway where the deliberative process is the central issue); *Vietnam Veterans of Am. v. C.I.A.*, No. 09 C 37, 2011 WL 4635139, *10 (N.D. Cal. Oct. 5, 2011) (declining to decide this same issue because the government's "intent is properly considered as a factor in the substantial need analysis"). We will explore Plaintiffs' particularized need for the documents below.

## B.     Defendants' Assertion of the Privilege

Defendants must satisfy both procedural and substantive requirements to establish the deliberative process privilege. Procedurally, the government must submit a formal claim from the appropriate department head, asserting the privilege based on his or her consideration of the circumstances. *Evans*, 231 F.R.D. at 316; *Ferrell*, 177 F.R.D. at 428. In that claim, typically an affidavit, the responsible official must "demonstrate . . . precise and certain reasons for preserving the confidentiality of the documents in question" and "specifically identify and describe the documents." *Ferrell*, 177 F.R.D. at 428 (quoting *K.L. v. Edgar*, 964 F. Supp. 1206, 1209 (N.D. Ill. 1997)); *Evans*, 231 F.R.D. at 316.

More substantively, in its proof the government must demonstrate that the documents are pre-decisional and deliberative. *Enviro Tech Int'l, Inc. v. U.S. Envi. Protection Agency*, 371 F.3d 370, 374–75 (7th Cir. 2004); *Sronkoski*, 2009 WL 1940779, at *1; *Evans*, 231 F.R.D. at

316. "[T]o qualify for the privilege, a document must be both pre-decisional in the sense that it is actually antecedent to the adoption of an agency policy, and deliberative in the sense that it is actually related to the process by which policies are formulated." *Enviro Tech Int'l, Inc.*, 371 F.3d at 375; *Sronkoski*, 2009 WL 1940779, at *2; *Tumas*, 2007 WL 2228695, at *2. The privilege does not extend to purely factual material or documents addressing an agency's final decision on a policy or its implementation. *Enviro Tech Int'l, Inc.*, 371 F.3d at 374; *Farley*, 11 F.3d at 1389; *Sronkoski*, 2009 WL 1940779, at *2.

Defendants have complied with the procedural requirements for their assertion of privilege. The declaration of Kevin Casey sufficiently sets forth his authority to claim the privilege and his rationale for doing so. Referencing the privilege log, Casey describes the withheld documents by specific Bates number and by category based on his reason for non-disclosure. (Casey Decl. ¶¶ 6–8.) He states that all of the documents are pre-decisional and "contain communications, opinions, recommendations and deliberations that are part of the procedure through which DHS formulates decisions and policies." (*Id.* ¶ 5.) For example, he describes the second category as document concerning "proposed policies and procedures at Murray Developmental Center." (*Id.* ¶ 6.) He identifies several reasons for preserving confidentiality of these documents, including their reflection of internal DHS deliberations and of DHS recommendations to the Governor and other decisionmakers. (*Id.* ¶ 8.) While we are sensitive to Plaintiffs' concern that Casey's declaration is too generic, we are equally sensitive to the reality that it is hard to be very specific without violating the confidences the deliberative process privilege is meant to protect.

We find that Defendants have also established that the documents are predecisional and deliberative. Plaintiffs argue that the withheld documents—all of which are dated within the last nine months—cannot be predecisional or deliberative because Defendants decided to close Murray in early 2012. (Resp. at 3.) That may be, but Plaintiffs' case does not rest solely on the initial selection of Murray for closure. Their claims also focus significantly on interim decisions made about the transition process, including resident assessments and communications about available options. The withheld documents touch on these and related issues. Deliberations concerning how to close Murray, as a practical matter, remain ongoing. In light of these unique circumstances, and despite the fact that Defendants lamentably did not specify which decision is reflected in which document, we conclude that these documents fall within the scope of privilege.

## C.     Plaintiffs' Particularized Need for the Documents

Because Defendants successfully invoked the privilege, Plaintiffs have the burden of showing their particularized need for the withheld documents. *Farley*, 11 F.3d at 1389; *Tumas*, 2007 WL 2228695, at *5; *Evans*, 231 F.R.D. at 316. As we balance the need for disclosure against Defendants' need for confidentiality, we consider:

> (1) the relevance of the documents to the litigation; (2) the availability of other evidence that would serve the same purpose as the documents sought; (3) the government's role in the litigation; (4) the seriousness of the litigation and the issues involved in it; and (5) the degree to which disclosure would tend to chill future deliberations within government agencies, that is would hinder frank and independent discussion about governmental policies and decisions.

*Ferrell*, 177 F.R.D. at 429 (quoting *Edgar*, 964 F. Supp. at 1209); *see Tumas*, 2007 WL 2228695, at *5; *Evans*, 231 F.R.D. at 316.

### 1.     Relevance

### a.    Categories 1–4 and 6–8

Having reviewed *in camera* every document submitted, we conclude that documents in

seven of the eight categories are relevant.  As Defendants indicated, the documents in the first

category concern needs, requests, and sources of CILA funding.  Funding of CILAs and SODCs

is clearly an issue in the litigation, highly relevant both to Plaintiffs' claims and Defendants'

likely affirmative defenses.  Plaintiffs indicate that Defendants already provided deposition

testimony on funding issues, (*see* Resp. at 4 & Ex. B), and we see no reason these documents

would not be relevant as well.

The second category of documents is also particularly necessary to Plaintiffs' claims.

These documents reflect Defendants' internal discussions about policies and procedures for

actually closing Murray, such as what meetings should take place, what should be discussed, and

who should be present.  The documents address who is involved in important transition-related

decisions and what information is available to residents and their guardians.[3]  These documents

go directly to the questions raised in Plaintiffs' complaint, which alleges that Murray residents

are being forced to relocate to CILAs in the absence of any other meaningful choice.

The third category of documents includes three versions of a draft policy addressing

ACCT housing options.  The draft policy discusses core principles underlying the ACCT

process, which is apparently underway for Murray residents, as well as requirements flowing

from those principles.  The requirements discussed shed some light on the process of selecting

---

[3] In their privilege log, Defendants claim that three documents within this category are also protected by the marital communications privilege.  The documents apparently were sent from Mary Casey to Kevin Casey but no other details are provided.  Because Defendants have not supported this claim of privilege or explained why it should apply, they may not rely on it at this time.

alternative residential options for Murray residents. The fourth category of documents similarly

concerns whether, and what type of, housing options might be available upon the closure of

Murray. For example, the document identified as DP DHS 257–260 identifies specific

challenges for placing Murray residents and options for securing necessary housing

development. The documents within the third and fourth categories are undisputedly relevant to

Plaintiffs' claims, which focus on their alleged deprivation of choice in residential options.

We turn then to the sixth and seventh categories, which generally discuss staffing and

management issues. For example, the proposals constituting the sixth category suggest

additional positions—a Re-Balancing Unit—to assist on-site with SODC closures and related

follow-up duties. The correspondence and proposals included in the seventh category

recommend a regional management structure, including a support team, that could oversee and

support SODC closures consistent with the Rebalancing Initiative. Both sets of documents

describe certain organizational needs created by the Rebalancing Initiative and the closing of

SODCs like Murray. The documents identify groups of people who Defendants feel should play

a role in the closures, to one degree or another, to meet those organizational needs. As with

many of the documents submitted for our review, we cannot predict whether these materials will

ultimately prove beneficial, prejudicial, or neutral as potential evidence, for either party.

Nonetheless, the sixth and seventh categories contain relevant documents.

The eighth category consists of a single email summarizing a weekly staffing meeting, at

which the participants discussed potential changes to policies concerning eligibility for services

for the developmentally disabled. This email suggests a change to the Eligibility Protocol for

individuals who transition out of SODCs. Although, on its face, the email does not reveal a

specific consequence of the proposed change, this discussion is relevant to the determination of services for Murray residents who transition elsewhere.

On the whole, the documents described above are relevant and, in some instances, necessary to Plaintiffs' claims.[4]  Plaintiffs allege, among other things, that Defendants have intentionally discriminated against them and their wards.  Defendants' reasoning behind the decision to close Murray, how to close Murray, and where to place its current residents, are therefore central issues to be litigated.  These documents reflect different aspects of Defendants' decisionmaking process, and their relevance weighs heavily in favor of disclosure.

### b.      Category 5

Finally, we evaluate the relevance of the fifth category of documents, which include comments about proposed changes to an Illinois statute.  That statute, 405 ILCS 30/4.6, governs what happens to the net proceeds from a sale of state land that follows the closure a facility previously operated to care for the mentally ill or the developmentally disabled.  The statute, for example, requires that such net proceeds should be used to provide services and supports for individuals with mental health or developmental disabilities needs.  Having reviewed these documents, we conclude that they are not relevant to the claims or defenses asserted in this lawsuit.  Neither the statute, nor the proposed changes, nor Defendants' opinions thereon, have any bearing on Plaintiffs' claims.  The statute concerns how the State will direct proceeds from the hypothetical sales of land in the future, following unspecified facility closures.  It does not

---

[4] Defendants argue that Plaintiffs' assertion of particularized need is conclusory and that they have not shown how these internal documents could be relevant.  (Reply at 3–4.) Defendants fail to appreciate the difficulty of Plaintiffs' position in attempting to show a need for documents they have not seen.  We are sensitive to Plaintiffs' plight in asserting need, as we have been sensitive to Defendants' plight in asserting privilege.

touch on whether Murray, or any SODC, should be closed, when, or how.  It does not materially address funding for any particular location or type of facility within the State health system.  The documents in this category do not address these issues or reveal Defendants' intent underlying the conduct challenged by Plaintiffs.  Accordingly, Plaintiffs cannot show a particularized need for this fifth set of documents.

### 2.    Other Factors Relevant to Balancing the Parties' Respective Needs

As to all other document categories, however, we consider the remaining factors relevant to assessing Plaintiffs' need.  The second factor asks whether Plaintiffs could obtain the same information from sources other than the withheld documents.  For the most part, Defendants do not argue that this information is available elsewhere.  They contend that they have already disclosed details about the second category of documents—concerning policies about Murray and its closure—because they produced drafts of the discharge policy that they shared during discussions about the policy with AFSCME.  (Reply at 4.)  Even if Defendants provided some information from this category, nothing is as likely to reveal their underlying intent as their own internal discussions on this most critical topic.  *Mulligan v. Vill. of Riverside*, No. 11 C 8200, 2013 WL 1340581, at *2 (N.D. Ill. Apr. 1, 2013) ("Because Mulligan is alleging that the Village wrongfully discriminated against him, there is a particularized need for the information because the Village's intent is directly at issue."); *Anderson*, 2001 WL 826878, at *4 ("Proof of such [subjective] intent is not easily obtained."); *see also Sronkoski*, 2009 WL 1940779, at *3; *Bd. of Educ. of City of Chi.*, 610 F. Supp. at 700.  Both the relevance of the pertinent documents from these categories "and the unavailability of this precise information in question from other sources weighs in favor of a finding of particularized need."  *Evans*, 231 F.R.D. at 317.

-12-

The third and fourth factors also significantly support Plaintiffs' request for disclosure. The government is not only a defendant and the pertinent decisionmaker in this case, it is also the provider of the essential public services at the heart of the dispute. *See id.* at 317 (noting that the government's role as a nonparty weighs against a finding of need); *Ferrell*, 177 F.R.D. at 430 (holding that " the government's obvious direct role in the litigation" favors disclosure). Without question, this litigation is of the utmost importance for Plaintiffs and their wards, who allegedly face serious physical and emotional trauma should the assessment and transfer process continue. This case also has important ramifications for Defendants, who seek to improve efficiency, to effectuate public policy favoring the de-institutionalization of the disabled when feasible, and to control the state budget—all worthy goals. And on a broader level, the citizens of Illinois have an interest in this litigation, which touches on how such closings should be handled, how the government allocates its public resources for the disabled, and whether our most vulnerable citizens are receiving appropriate care. Few cases involve such serious questions with such serious consequences.

The fifth and final factor requires us to gauge "the degree to which disclosure of the documents . . . would hinder frank and independent discussion about governmental policies and decisions." *Ferrell*, 177 F.R.D. at 429 (quoting *Edgar*, 964 F. Supp. at 1209); *Evans*, 231 F.R.D. at 316. This factor weighs in favor of preserving the deliberative process privilege. Requiring disclosure of the withheld materials certainly will give Defendants pause, along with their internal decisionmakers. But we do not expect any initial chill spread by disclosure to deter Defendants from engaging in thorough, honest deliberations on future policies and decisions. Ultimately, Plaintiffs' need for the documents and the importance of the issues raised in this

litigation decidedly outweigh Defendants' desire for secrecy. We do not lightly set aside their confidentiality, and we do so with full confidence that their frank and necessary deliberations will continue as they fulfill their duties. Under the circumstances present here, however, the privilege must yield to Plaintiffs' particularized need.

**CONCLUSION**

As set forth above, the deliberative process privilege does not protect the documents identified by Defendants as categories 1 through 4, and categories 6 through 8. Defendants must provide these documents to Plaintiffs as soon as possible and, in any event, within three business hours from the issuance of this opinion. The documents included as category 5 need not be disclosed, as they are shielded by the privilege. It is so ordered.

_____
Honorable Marvin E. Aspen
U.S. District Court Judge

Dated: September 3, 2013