UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| ILLINOIS LEAGUE OF ADVOCATES FOR THE DEVELOPMENTALLY, DISABLED, *et al.* | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 13 C 1300 |
| v. | ) ) | Judge Marvin E. Aspen |
| PATRICK QUINN, *et al.* | ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Court Judge:

Presently before us is a Motion to Bar Various Testimonial Affidavits and Exhibits Submitted by Plaintiffs (Dkt. No. 280), filed by Defendants Illinois Department of Human Services ("DHS"), Kevin Casey, and Michelle R.B. Saddler ("DHS Defendants"). As set forth below, the motion is granted in part and denied in part.

### BACKGROUND[1]

Plaintiffs seek to represent a class comprised of developmentally disabled individuals who, at any time since January 1, 2011, currently reside or formerly resided at one of two SODCs (State Operated Development Centers)—Jacksonville and Murray—and who oppose transfer from their SODC home to a community integrated living arrangement ("CILA"). (Compl. ¶¶ 1–4, 42–50, 58.) Based on their profound disabilities, the putative class members are

---

[1] We assume familiarity with the background of this case, previously recounted in other opinions.

entitled to receive a level of care and treatment known as ICF/MR services (Intermediate Care Facility of the Mentally Retarded). As alleged in the complaint, these services are available at three types of facilities: (1) private facilities, known as ICF-DDs (Intermediate Care Facility for Persons with Developmental Disabilities); (2) SODCs; or (3) CILAs, under certain circumstances. (*Id.* ¶¶ 19–20, 74, 93–94, 98; *see* Pls.' Br. ISO Legal Theory (Dkt. No. 159) at 4–5.) Plaintiffs allege that the State of Illinois' decision to close the Murray and Jacksonville SODCs for budgetary reasons and force the disabled residents to move into CILAs violates federal law.

According to Plaintiffs, community-based placements are unsuitable for the needs of the profoundly disabled class members because they pose serious threats to their physical safety and emotional well-being. (Compl. ¶¶ 3, 6–7, 25–27, 31–34, 57–61 & Ex. B (Winkeler & Kelly Affs.).) As a result, Plaintiffs have refused to consent to CILA transfers. Plaintiffs further allege that Defendants have not offered spots at other SODCs or adequate replacement services equivalent to those offered at SODCs. Plaintiffs claim that, to the contrary, Defendants have undertaken a flawed assessment process that has predetermined class members' ability to succeed in a CILA. (*Id.* ¶¶ 60–62, 66–74). In addition, Plaintiffs allege that the class members are either unlikely or unable to obtain care at a private ICF-DD facility. (*Id.*) Accordingly, Plaintiffs and their wards have little choice but to move to a CILA. (*See id.* ¶ 73.)

Plaintiffs contend that Defendants' conduct—particularly implementation of the allegedly rigged assessment and transfer process—discriminates against the class members on the basis of their disabilities in violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act, denies them equal protection, and deprives them of information and choice as

required by the Medicaid Act. They seek injunctive relief preventing the assessment and transfer of Murray residents, the closure of Murray, and appointment of a monitor. A preliminary injunction hearing will begin on January 6, 2014.

In preparation for the hearing, DHS Defendants filed the present motion, seeking to exclude certain materials. DHS Defendants ask that we bar many of the twenty-five declarations submitted by Plaintiffs as the direct testimony of their witnesses. We address DHS Defendants' concerns as necessary below.[2]

## STANDARD OF REVIEW

DHS Defendants' motion is essentially a motion in limine. Pursuant to our "inherent authority to manage the course of trials," we have broad discretion when ruling on evidentiary questions raised by motions in limine. *Luce v. United States*, 469 U.S. 38, 41 n.4, 105 S. Ct. 460, 463 (1984); *Perry v. City of Chi.*, 733 F.3d 248, 252 (7th Cir. 2013); *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). In limine rulings serve "to ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v. Lutheran Child and Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997); *see Tzoumis v. Tempel Steel Co.*, 168 F. Supp. 2d 871, 873 (N.D. Ill. 2001). Such rulings allow the parties to focus their preparations, eliminate delays during trial, and enable us to preemptively exclude "evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissable for any purpose." *Jonasson*, 115 F.3d at 440; *Goldberg v. 401 N. Wabash Venture LLC*, No. 09 C

---

[2] We need not discuss in detail Defendants' consternation at the number of affidavits (or declarations, as the case may be) submitted by Plaintiffs for their fact witnesses. We did not limit the parties to any particular number of witnesses, and we see no reason to constrict Plaintiffs' ability to present their case. We are confident, based on the record before us, that Defendants, if they wish, have sufficient information from which they can select witnesses for cross-examination.

6455, 2013 WL 1816162, at *1 (N.D. Ill. Apr. 29, 2013); *Casares v. Bernal*, 790 F. Supp. 2d 769, 775 (N.D. Ill. 2011); *Thomas v. Sheahan*, 514 F. Supp. 2d 1083, 1087 (N.D. Ill. 2007).

Unless the moving party can demonstrate that the challenged evidence is clearly inadmissible on all possible grounds, we must defer our evidentiary ruling until trial. *Thomas*, 514 F. Supp. 2d at 1087; *Anglin v. Sears Roebuck & Co.*, 139 F. Supp. 2d 914, 917 (N.D. Ill. 2001); *Tzoumis*, 168 F. Supp. 2d at 873. We can then accurately assess the foundation, relevance, and potential prejudice of the evidence in the context of the trial as a whole. *Casares*, 790 F. Supp. 2d at 775; *Thomas*, 514 F. Supp. 2d at 1087; *Tzoumis*, 168 F. Supp. 2d at 873. In a bench trial, as here, the dangers of unfair prejudice, irrelevancy, and confusion are minimal. *See, e.g.*, *Abbott Labs. v. TorPharm, Inc.*, No. 97 C 7515, 2003 WL 22462614, at *20 (N.D. Ill. Oct. 29, 2003). Because a ruling on a motion in limine is "subject to change as the case unfolds," we reserve the option of revisiting our preliminary evidentiary determinations as appropriate at trial. *Luce*, 469 U.S. at 41, 105 S. Ct. at 163; *Perry v. City of Chi.*, 733 F.3d 248, 252 (7th Cir. 2013); *Thomas*, 514 F. Supp. 2d at 1087.

## ANALYSIS

Defendants' motion seeks to bar the exhibits submitted with the declaration of Plaintiffs' Rule 30(b)(6) witness, Rita Winkeler, and to exclude testimony concerning irrelevant or redundant material.

### I. EXHIBIT TO MS. WINKELER'S DECLARATION

Rita Winkeler submitted a declaration on behalf of Plaintiff Murray Parents Association ("MPA"). Ms. Winkeler is the President of MPA, which consists of parents, family members, and staff of Murray, as well as others. MPA officially and publicly opposes the closure of

Murray and the forced transfer of residents into group homes. (Winkeler Decl. ¶¶ 1–2, 8.)

As an exhibit to her declaration, Ms. Winkeler submitted hundreds of pages of letters written by Murray parents and guardians, Murray employees, local citizens, and other concerned individuals. All of the letters oppose the intended closure of Murray for one reason or another. Letters from parents and guardians typically offer details about their wards' conditions, about their happiness at Murray, and about their difficulties in other housing arrangements. Other letters, such as those submitted by employees, often laud the grounds, programs offered, and level of care provided to residents at Murray. Some letters express concern about the closure's potential effect on the Centralia community, in particular the local economy. Nearly all of the letters specifically ask this court to keep Murray open.

According to Ms. Winkeler, the purpose of the letters is to explain how numerous wards previously attempted to live in community placements but failed there. The letters describe how many wards have thrived at Murray, which is the least restrictive option for many of its residents. (Winkeler Decl. ¶ 21.) Plaintiffs contend that these letters show the harm to Murray residents posed by the CRA/ACCT assessment process and the facility's closure. (Resp. at 8–9.)

Defendants, on the other hand, argue that the letters are inadmissible and, in many instances, inappropriate. (Mot. at 2–3; Reply at 2–3.) Neither party sufficiently analyzes these evidentiary concerns or cites pertinent law governing the potential admissibility of the letters. Many of the letters plainly constitute hearsay, as they are out-of-court statements offered to prove the truth of the matter asserted.[3] The letters, moreover, are unsworn and unauthenticated.

---

[3] By way of example, the letters include assertions such as: (1) "Taking [him] away from the Murray Center would be detrimental to his health;" (2) "She was in and out of the hospital all

Nonetheless, "hearsay can be considered in entering a preliminary injunction." *SEC v. Cherif*, 993 F.2d 403, 412 n.8 (7th Cir. 1991). "A district court may grant a preliminary injunction based on less formal procedures and on less extensive evidence than a trial on the merits."[4] *Dexia Credit Local v. Rogan*, 602 F.3d 879, 885 (7th Cir. 2010); *see Univ. of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834 (1981). "The dispositive question is not [the evidence's] classification as hearsay but whether, weighing all the attendant factors, including the need for expedition, this type of evidence [is] appropriate given the character and objectives of the injunctive proceeding." *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986) (hearsay acceptable for preliminary injunction determination); *Central States, S.E. & S.W. Areas Pension Fund v. Breeko Corp.*, No. 89 C 6866, 1989 WL 153547, at *3 (N.D. Ill. Nov. 20, 1989) (same); *see also* Wright & Miller, *Fed. Prac. & Proc.* § 2949 (2013).

Here, to succeed at the preliminary injunction hearing, Plaintiffs need to show—among other things—that class members will suffer irreparable harm if Defendants' conduct is not

---

the time at the smaller home because they just didn't have the means of caring for someone with [her] needs;" (3) "She became a resident of Murray . . . after 2 group homes were unable to handle her behavior disorders and asked that she be removed;" (4) "[He] could not function in a small group home placement with minimal security and less-than-adequate living assistance;" (5) "No community center . . . without a 24 hour watch would be capable of caring for my son;" (6) "He has had six different placements in CILAs. Each one was fraught with more serious problems that the staff could handle and required police interventions and/or hospitalizations;" (7) "He, like the rest of the residents of Murray cannot receive these services in a community placement;" (8) "In her group home environment, [she] had more violent outbursts, several trips to the hospital where she had to be physically restrained . . . and finally was told she could no longer stay there;" (9) "If he was able to live in a less restrictive setting, he would already be doing so;" and (10) "[A] group living situation is not a viable option for him. In fact, any move will be traumatic for him and possibly life threatening." (Winkeler Decl., Ex. (assorted letters, filed under seal).)

[4] The parties are advised that we will require strict compliance with the rules of evidence at any permanent injunction hearing.

further enjoined.  *See Planned Parenthood of Ind. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 972 (7th Cir. 2012); *ACLU v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012).  They must also demonstrate a likelihood of success on the merits, which will require, for example, evidence supporting Plaintiffs' claims that their wards are disabled and entitled to ICF/MR services, that they cannot obtain such services in either a CILA or private ICF/DD facility, and that they are being deprived of any other feasible options currently offered by the State of Illinois.  *See, e.g., Ill. League of Advocates for the Developmentally Disabled et al. v. Quinn*, No, 13 C 1300, 2013 WL 5548929, at *7–8 (N.D. Ill. Oct. 8, 2013) (discussing the sufficiency of Plaintiffs' discrimination allegations).  Some of the letters—particularly the letters from guardians describing in detail their wards' conditions and experiences in different types of housing—include facts relevant to the issues to be determined at the preliminary injunction hearing.  As noted on prior occasions, this litigation is of the utmost importance for Plaintiffs and their wards, yet also carries significant ramifications for Defendants, who seek to close Murray as soon as practicable.

In light of these factors, we will not exclude outright the letters attached to Ms. Winkeler's declaration.  We will review them, although we cannot afford them the same weight as any sworn testimony or any stipulated facts provided by the parties for purposes of the hearing.  We will not rely on the significant amount of irrelevant information, generalities,[5] hyperbole, and hypotheticals shared in the letters.  In addition, we will not consider any portion

---

[5] We need not credit, for example, comments about Governor Quinn, fears about the future employment prospects of Murray employees, speculation about the well-being of unspecified residents, and generalities about the care provided by staff (i.e., "[T]he people that live there are being cared for and loved.").  We also decline to rely on letters provided by children or by individuals who have not sufficiently identified themselves or their interest in this litigation.  (Winkeler Decl., Ex.)

of a letter that reveals the author's lack of personal knowledge.[6] Consistent with these rulings, Defendants' motion is granted in part, and denied in part, with respect to the exhibits to Ms. Winkeler's 30(b)(6) declaration.[7]

## II. RELEVANCY DISPUTES

We take a similar, commonsense approach when evaluating the parties' additional evidentiary disputes, bearing in mind that we will not exclude evidence *per se* unless it is clearly inadmissible for any purpose. *Jonasson*, 115 F.3d at 440.

### A. Irrelevance Due to Guardian Consent

In their briefs, DHS Defendants repeatedly argue that evidence about unsuccessful Murray resident transfers should be excluded because the guardians of those residents had consented to the transfers at issue. (Mot. at 4–7, 9–10; Reply at 3–10.) DHS Defendants contend that "the trial evidence should be structured in such a way that the principal focus is on the question of consent." (Reply at 8.) Thus, according to DHS Defendants, testimony concerning the transfers of (a) wards of the Office of the Special Guardian ("OSG"), and (b) a resident identified as J.F., are irrelevant because their guardians consented to those transfers.

---

[6] We will ignore, for example, comments such as: (1) "My understanding is that some of the residents of Murray Center were unable to live in community homes in the past;" (2) "We are informed, moreover, that things have not gone well for some former residents who had already been moved elsewhere;" and (3) "Such moves have with other institutions proven to have long range negative impact on these people." (Winkeler Decl., Ex.)

[7] We pause to express our concern that the authors of these letters clearly believe that we have the authority to "save" Murray. As both parties have acknowledged, Plaintiffs cannot force the State to permanently maintain any particular facility. This lawsuit is about Defendants' provision of information and services to Plaintiffs and class members, to the extent required by federal law. We are not here to decide the ultimate fate of Murray.

Defendants oversimplify the focus of the preliminary injunction hearing. The hearing will address consent—or the lack of choice, as the question is framed by Plaintiffs—but it will cover other critical issues as well. As mentioned earlier, Plaintiffs must demonstrate irreparable harm absent our issuance of the requested injunction. *See Planned Parenthood of Ind.*, 699 F.3d at 972; *ACLU*, 679 F.3d at 589. In doing so, Plaintiffs logically must point to the placement experiences of residents who agreed to leave Murray as evidence of the allegedly deficient levels of services and safeguards at CILAs. While guardian consent removes the transferred residents from the putative class, as previously held, it does not affect Plaintiffs' claim that the remaining Murray residents may suffer similar harms if they are forced, as alleged, into a CILA placement. Evidence describing the ramifications of recent transfers of Murray residents to group homes through the CRA/ACCT process, with consent, is relevant to the positions of both parties. Accordingly, we deny DHS Defendants' motion to exclude evidence concerning the transfer experiences of OSG wards, and of J.F.

That being said, we agree with DHS Defendants that the "OSG is not on trial." (Mem. at 6.) We are not in a position to evaluate the conduct or job performance of the OSG, Ms. Omer, and we will not consider evidence attacking her personal involvement or the wisdom of her consent decisions.

### B. Additional Relevancy Objections

DHS Defendants also ask that we exclude several additional types of evidence due to a lack of relevance. Except to the extent indicated below, the motion is denied as to these more specific requests.

1. Standard Operating Procedure 181 ("SOPP 181")

As DHS Defendants state, some declarations from Murray staff members describe how SOPP 181, a discharge planning policy, is not being followed for the assessment and transition of Murray residents out of the facility. (Mem. at 7–8; Reply at 9–10; *see, e.g.*, Bill Henson Decl. (Pls.' Ex. 12).) DHS Defendants insist that compliance with SOPP 181 is unnecessary because the policy does not apply where a facility is in the process of closing, such as Murray. Thus, according to DHS Defendants, evidence of non-compliance with SOPP 181 is irrelevant.

There are two problems with DHS Defendants' position. First, as a practical matter, we cannot yet accept their conclusions that SOPP 181 is inapplicable to Murray's closure and that the replacement CRA/ACCT procedure follows federal law. (*See* Mem. at 7–8; Reply at 7.) Second, and more importantly, DHS Defendants have not shown that information about SOPP 181 is irrelevant or inadmissible for any purpose. *Jonasson*, 115 F.3d at 440. To the contrary, evidence about SOPP 181 may be probative when assessing the State's implementation of the CRA/ACCT process. For example—even if the State is correct that SOPP 181 no longer applies for Murray residents—the differences between SOPP 181 and the CRA/ACCT process may support Plaintiffs' allegations about the State's predetermination of future placements for Murray residents, the lack of choice offered guardians, or the risks posed by the failure to fully evaluate resident needs. Because this information may prove relevant for some purpose, we will not preemptively bar Plaintiffs from introducing it. *Thomas*, 514 F. Supp. 2d at 1087; *Anglin*, 139 F. Supp. 2d at 917; *Tzoumis*, 168 F. Supp. 2d at 873.

2.      HIPAA Violations

DHS Defendants also contend that Alicia Creed's declaration (Pls.' Ex. 13) must be excluded because it raises irrelevant complaints about alleged HIPAA violations. (Mem. at 8–9; Reply at 10.) Defendants accurately point out that Plaintiffs have not pled a cause of action under HIPAA. We thus need not assess whether any HIPAA violations took place under the circumstances described in Ms. Creed's declaration.

Nonetheless, Defendants have not shown that Ms. Creed's declaration should be stricken, either in whole or in part. Ms. Creed states that, on at least two occasions, CRA employees removed the charts of Murray residents whose guardians explicitly prohibited CRA from doing so, as indicated by written forms contained in the resident files. While this testimony may not constitute direct evidence of an ultimate fact, it is relevant. *See* Fed. R. Evid. 401 (defining relevant evidence as having "any tendency to make a fact more or less probable"). Plaintiffs claim that the State, through the CRA/ACCT process, is disrespecting and will continue to disrespect guardian wishes by moving forward with the assessment and transfer of Murray residents to CILAs, whether or not equivalent services are offered. HIPAA claims aside, Ms. Creed's account is relevant as it has a tendency to show that Defendants are actively disregarding Murray guardian instructions as to resident files, which represents an initial phase of the transfer process. DHS Defendants' motion is thus denied as to Ms. Creed's declaration.

3.      "Inconsequential" Incidents

DHS Defendants ask that we also strike testimony from witnesses who describe "inconsequential" incidents. (Mem. at 10.) Specifically, DHS Defendants take issue with two declarations from Murray employees who state that they were instructed to transfer a resident's

belongings to a home, only to discover upon arrival that the home was not yet habitable. (Pls.' Exs. 24–25.) These Murray employees contacted a supervisor, who called off the resident's imminent transfer to the home. DHS Defendants claim that this incident is entirely irrelevant because the legal standard does not require that the transfer of hundreds of residents must be "glitch-free in every respect." (Mem. at 10.) We disagree. This testimony describes an incident where Defendants planned and initiated a move to a home that was still under construction, without inspecting the physical condition of the building or confirming that staff or safeguards were in place. Such evidence may support Plaintiffs' assertion that Defendants are rushing the assessments and transfers of residents and failing to ensure that the new housing arrangements are suitable for the disabled residents displaced from Murray. We will consider this evidence.

DHS Defendants next contend that we must exclude the declaration of Steve Koppen (Pls.' Ex. 22) because it reports discussions about labor matters between Mr. Koppen and Jamie Veach, the Director of Murray. While DHS Defendants are correct that labor matters are not at issue in this lawsuit, this declaration is marginally relevant to Plaintiffs' Medicaid Act claim. Plaintiffs allege that Defendants have not informed them of all feasible housing alternatives for Murray residents and have deprived them of any meaningful choice. Mr. Koppen's testimony indicates that he was instructed not to respond if a Murray guardian asked for his opinion about whether a particular resident might succeed in a CILA home. (Koppen Decl. ¶ 5.) According to Mr. Koppen, he was told to direct guardians to Rick Starr and that failure to comply with this instruction could result in his termination. We will allow this testimony to the extent that it may

support Plaintiffs' allegation that they are being deprived of information about future housing options that would allow them to make informed placement decisions.

        4.       Additional Caveats

Consistent with the above rulings, we set forth some additional evidentiary caveats. We will not give added weight to redundant evidence.[8] We also do not intend to rely on testimony describing incidents where the resident is not readily identifiable by name, initials, or factual circumstance. We are not interested in the merits of Murray labor and employment complaints. We recognize that there may be a fine line between evidence of an employment dispute and evidence that residents are being assessed against guardian wishes, pre-selected for group homes, and/or deprived of information and choice. We are capable of separating the wheat from the chaff throughout the course of the preliminary injunction proceedings, however, and we will consider such evidence for the latter purposes only.

## CONCLUSION

As described above, DHS Defendants' motion is granted in part and denied in part. It is so ordered.

*[signature]*
Honorable Marvin E. Aspen
U.S. District Court Judge

Dated: December 5, 2013

---

[8] Plaintiffs' Exhibits 24 and 25, for example, recount the same incident. Several declarations describe an altercation involving two residents, identified as M.A. and T.K.